# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV583-H

| | |
|---|---|
| JESS H. ANAYA, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JO ANNE B. BARNHART, ) <br> Commissioner of Social ) <br> Security Administration, ) <br> Defendant. ) <br> ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #8) and "Brief Supporting ..." (document #9), both filed March 28, 2005; and Defendant's "Motion For Summary Judgment" (document #12) and "Memorandum in Support of the Commissioner's Decision" (document #14), both filed June 27, 2005. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Plaintiff's Motion for Summary Judgment; <u>grant</u> Defendant's Motion for Summary Judgment; and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On May 17, 2001, the Plaintiff filed an application for Social Security Disability benefits ("DIB"), alleging he was unable to work as of April 2, 2001, due to "osteoporosis ... severe pain on

[sic] lower back – unable to sit or stand for long periods of time." (Tr. 85.)[1]  The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on November 22, 2002.  On January 7, 2003, the ALJ issued a decision denying the Plaintiff's claim.   On February 5, 2003, the Plaintiff filed a timely Request for Review of Hearing Decision.  On April 1, 2004, and after an apparent delay in providing Plaintiff's representative with a copy of the audio tape of the hearing, the Appeals Council granted the Plaintiff an extension in order to submit additional evidence, if any.  However, the Plaintiff did not submit further evidence, and on September 27, 2004, the Appeals Council denied his request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on November 24, 2004, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II.  FACTUAL BACKGROUND

The Plaintiff testified that he was born on October 28, 1948, and was 54 years-old at the time of the hearing; that he was 5' 4" and weighed 145 pounds; that he was married and had two sons, one an adult and the other 17 years-old; that he lived with his wife and sons; that he had completed high school and had completed two years of college education in Mexico; that he spoke English and Spanish proficiently; that at his last job, he worked "in customer service and inside sales" for a textile manufacturer; that he had performed other similar jobs over 17 years for several different employers; that his last job required him to sit at a desk, use a computer, and talk to customers on the telephone for eight hours each day; that he could not stand while he worked; that he last worked

---

[1] Plaintiff filed a prior application on March 8, 1995, which was denied administratively on March 15, 1995, and not further pursued.  Accordingly, said denial is <u>res judicata</u> through the later date.

2

in April 2001; and that he stopped working because he could no longer sit due to back pain.

Regarding his medical and emotional condition, the Plaintiff testified that he had undergone back surgery and continued to suffer low back pain; that the pain "occasionally" radiated into his legs and was "sharp at times," that the pain had never caused him to lose his balance; that he could sit no more than 30-40 minutes at one time; that pain medication and a TENS unit relieved some of his pain; that he had not had injections for pain; that he was no longer walking or otherwise exercising; and that he also suffered osteoporosis and muscle cramps in his thighs.

As to daily activities, the Plaintiff testified that he was able to shower/bathe, shave, and dress himself; that he performed light housework, such as dusting and taking clothes out of the dryer; that he "rarely" left the house; and that he spent each day watching television, reading the newspaper, and "walk[ing] around."

A Vocational Expert ("VE") classified the Plaintiff's prior work experience as skilled work performed at either the sedentary or light exertional levels with skills transferable to other light and/or sedentary jobs.

The ALJ then gave the VE the following hypothetical:

> exertional impairments would permit sedentary and light work on a sustained basis ... significant non-exertional impairments related to a back problem ... rule out frequent or repetitive bending, stooping, squatting, climbing ... a degree of chronic pain which with appropriate medication would permit unskilled or semi-skilled concentration but ... rule out any sustained skilled concentration ... would require a sit/stand option in carrying out job duties, the ability to change position every hour if not at will ... if I were to place those limitations on a male of perhaps 52 to 54 with a high-school plus educational ... and the prior relevant work you have outlined for us, are there any jobs that would accommodate those various limitations?

(Tr. 52.)

The VE testified that with these limitations, the Plaintiff could work as a surveillance systems

monitor, a cashier, and a garment ripper, and that factoring in the necessity of a sit/stand option, 1,500 and 4,800 of these unskilled jobs were available in North Carolina at the sedentary and light exertional levels, respectively.

The record also contains a number of representations by Plaintiff as contained in his various applications in support of his claim. On a Disability Report, dated May 17, 2001, Plaintiff stated that he was unable to work because of "osteoporosis ... severe pain on [sic] lower back – unable to sit or stand for long periods of time." (Tr. 85). The Agency interviewer who took the report noted that although the Plaintiff had some difficulty sitting, he had no difficulty standing, walking, seeing, using his hands, writing, hearing, breathing, understanding, thinking coherently, concentrating, talking, or answering.

On a Reconsideration Disability Report, dated July 30, 2001, Plaintiff stated that his condition was worse; that he had undergone spinal surgery; that he was "trying to resume [his] normal activities"; that he could not stand or sit for long periods; that his doctor had restricted him from lifting; and that he had quit his job because he could not sit in front of his computer for long periods of time.

An August 27, 2001 Report of Contact reflects that Plaintiff stated that he could bathe and dress himself; that concerning household chores, he "d[id] some things around the house"; that he walked two miles per day as prescribed by his doctor; that he had no difficulty concentrating and was responsible for paying household bills and managing the other aspects of the household finances; and that the Plaintiff attended church. The same report reflects that Plaintiff's wife, Barbara Anaya, stated that the Plaintiff drove a car, including driving Mrs. Anaya's elderly mother "places when she needs to go"; and that the Plaintiff was not depressed, but rather was "frustrated" with his condition.

On an undated Claimant's Statement When Request for Hearing is Filed and the Issue is Disability, the Plaintiff stated that his condition had worsened.

On June 22, 2001, Edward Woods, M.D., completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that he had the residual functional capacity for medium work with no nonexertional limitations.

On September 27, 2001, Robert Pyle, M.D., completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; that he should avoid more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; and that with these nonexertional limitations, the Plaintiff had the residual functional capacity for light work.

On September 28, 2001, Robert Johnson, Ph.D., completed a Psychiatric Review Technique and concluded that the Plaintiff did not have any "medically determinable" mental or emotional impairment.

The parties have not assigned error to the ALJ's recitation of the medical records (presented to the ALJ at or after the hearing). Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The evidence of record demonstrates that the claimant has osteopenia, a chronic lumbar compression fracture with back pain, depression and hypertension. The claimant's hypertension is well controlled on Prinivil (Exhibit 2F, page 1)(Exhibit 3F, page 1)(Exhibit 4F, Page 10). The claimant complained of leg cramp, spasms,

5

and soreness when Dr. David P. Malone, an internist, saw him in March 2002. He was assessed with insomnia and depression and treated with Paxil. His hypertension was also controlled with the prescribed medication (Exhibit 8F, page 2). In June 2002, the claimant sought emergency care for a seizure with numbness in bilateral lower extremity, loss of consciousness, and motor activity. He also experienced increased nausea and vomiting. A CT scan of brain was normal except for a calcification in the right occipital pole and was of no acute clinical significance (Exhibit 11F, pages 7, 9, and 16). The claimant's hypertension is well controlled with the prescribed medication for a severe impairment....

The medical evidence of record reflects that the claimant experienced osteopenia with an L-1 lumbar compression fracture and subsequent back pain, and that he has been treated with anti-inflammatory drugs, calcium and vitamin D supplements. Around the time of the alleged disability onset date, the claimant was complaining of increasing back pain, and pain in the right lateral and anterior chest wall (Exhibit 3F, page 3). When the claimant was examined in April 2001, he was in mild discomfort when getting out of the chair and when sitting up from a reclined position. The claimant's osteoporosis was treated conservatively with anti-inflammatory, muscle relaxants and narcotics, but the pain persisted (Exhibit 4F, page 6).

When Dr. Leon A. Dickerson, the claimant's treating physician, examined the claimant in April 2001, he found that the claimant was diffusively sore around the L1-L2 area, but had excellent flexion and extension, as well as bending with some pain, and that his lower extremities, motor and sensory examinations as well as reflexes were within the normal ranges. The claimant experienced chronic low back pain with osteoporosis of the lumbar spine. X-rays of the spine showed a fracture at L1 diffusely across the entire body. The claimant had chronic pain and was prescribed a course of physical therapy three times a week during April and May 2001 and a home exercise program. The claimant continued to report that he was experiencing low back pain with temporary relief from his medications, but during the sixth visit, it was noted that there were no significant changes in his symptoms. By the last session of the physical therapy, the claimant was experiencing good relief from his TENS unit, and reported that the exercises were going well. He was discharged upon completion of the twelfth session (Exhibit 5F, page 5). A magnetic resonance imaging conducted in May 2001 demonstrated reactive changes between L1 and L2. It was determined that the claimant was a good candidate for back surgery (Exhibit 4F, page 3). After the claimant's symptoms were refractory to conservative measures consisting of brace, activity modification and narcotic medications, he underwent pre-operative discussion with Dr. Eric B. Laxer, an orthopedic surgeon. The claimant underwent an L1 kyphoplasty in June 2001 without complications (Exhibit 4F, page 4)(Exhibit 6F, pages 3-6). The claimant's treatment regimen included a lumbar brace and a TENS unit. Post-operatively, he experienced some pressure in his lumbar spine, but was walking normally and the imaging studies were normal....

> In April 2002, Dr. Laxer indicated that because the claimant had persistent back pain requiring anti-inflammatory drugs, muscle relaxant and narcotic drugs, he was unable to return to work. Yet, he had not seen the claimant since around July 2001, at which time he found that the claimant was doing well (Exhibit 6F, page 3)(Exhibit 10F). In his statement dated November 18, 2002, Dr. Laxer indicated that the claimant had persistent pain, which was fairly constant and aggravated by the claimant's walking for 15 minutes, and that the claimant's symptoms were consistent with his diagnosis. Dr. Laxer opined that the claimant's symptoms precluded him from performing work on a regular and sustained basis (Exhibit 12F, page 2).

(Tr. 15, 17-18.) As the Defendant points out in her brief, in his November 18, 2002 letter, Dr. Laxer did not base his opinion that the Plaintiff could not work on a recent examination but rather on the Plaintiff's May 2001 MRI.

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the

7

Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2]

The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

suffered chronic lumbar compression fracture with back pain and osteoporosis, which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff had the residual functional capacity for unskilled light and sedentary work[3] that allowed an "at will" sit/stand option and required no more than occasional bending, stooping, and squatting; that Plaintiff was unable to perform his past relevant work; and that the Plaintiff was an "individual approaching advanced age" with a "more than high school education" and skilled work experience.

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. The VE's testimony, stated above and based on a hypothetical that factored in the limitations discussed above, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform. Additionally, the undersigned notes that even had the ALJ limited the Plaintiff solely to a residual functional capacity for sedentary work, the VE's testimony provided substantial evidence that there were still a significant number of jobs in the national economy that the Plaintiff could have performed.

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity

---

[3]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

("RFC"). See Plaintiff's "Motion for Summary Judgment" (document #8) and "Brief Supporting …" (document #9). However, the undersigned finds that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Dr. Woods, the first Agency medical evaluator to consider the Plaintiff's medical history, concluded that the Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that the Plaintiff had a residual functional capacity for medium work. Dr. Pyle, the second Agency expert, found that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; that he had nonexertional limitations due to reduced range of motion in his back, that is, reduced ability to bend, stoop, and squat; and that with his nonexertional limitations, the Plaintiff had the residual functional capacity for light work.

As discussed above, the ALJ accepted Dr. Pyle's more restrictive physical residual functional capacity evaluation for light work with nonexertional limitations on bending, stooping, and squatting. Moreover, the ALJ placed the additional nonexertional limitation on the Plaintiff's RFC of an "at will" sit/stand option, that is, the ALJ factored in the Plaintiff's chief complaint, as

expressed at the hearing and in various documents in support of his application, that he was unable to work because he could no longer sit for prolonged periods. Finally, although Dr. Johnson, the Agency psychological expert, found that the Plaintiff did not have any medically determinable mental or emotional impairment, the ALJ restricted the Plaintiff to unskilled work, an accommodation of the Plaintiff's alleged inability to concentrate due to his chronic pain.

The Plaintiff assigns error to the ALJ's treatment of Dr. Laxer's April and November 2002 opinions, that is, the ALJ's decision that Dr. Laxer's opinions that the Plaintiff was unable to perform any kind of work were not entitled to controlling weight. The undersigned concludes, however, that the ALJ's treatment of these opinions was supported by substantial evidence.

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

At the outset, as the ALJ correctly noted in his decision, based on the evidence of record, Dr. Laxer last treated Plaintiff on July 10, 2001, at which time he indicated that Plaintiff was "doing well" after surgery, that is, that a lumbar X-ray "look[ed] okay" and that Plaintiff was walking

normally.[4] Moreover, at no time during treatment did Dr. Laxer limit Plaintiff's activities in any way. Instead, two weeks after surgery, Dr. Laxer encouraged Plaintiff to resume walking two miles each day.

Rather than proving the existence of a disability, the undisputed medical record clearly supports the ALJ's essential conclusion: that Plaintiff suffered from – but was not disabled by – chronic lumbar compression fracture with back pain and osteoporosis. Dr. Malone found Plaintiff's back to be non-tender and noted that Plaintiff experienced only mild discomfort when getting out of a chair and when sitting up from the lying position Dr. Dickerson found that Plaintiff had excellent/flexion extension with some pain, normal lower extremity motor, sensory and reflex exams, and painless hip rotation; that X-rays revealed that Plaintiff's medication was helping his osteoporosis; and that his bone density was "nearly normal." Dr. Dickerson recommended physical therapy, which Plaintiff later reported, along with the use of a TENS unit, relieved some of his pain. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The record also establishes that the Plaintiff engaged in significant daily life activities, such as bathing and dressing himself, performing some household chores, driving his mother-in-law on

---

[4] If, as Plaintiff asserts generally in his brief, there were other, later treatment notes from Dr. Laxer, it was the Plaintiff's duty to introduce them into the record. 20 C.F.R. § 404.1512(a). However, despite receiving an extension of time from the Appeals Counsel, the Plaintiff failed to introduce any additional medical records or other new evidence.

errands, attending church, reading, watching television, and paying household bills. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's chronic lumbar compression fracture with back pain and osteoporosis – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Mickles</u>, 29 F.3d at 921, citing <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on a moderate level of daily activities, that is, Plaintiff's ability to take care of his personal needs, to perform some household chores, and to drive and go to church, as well as the objective evidence in the medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether

a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #8) is **DENIED**; Defendant's "Motion for Summary Judgment" (document #12) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

**Signed: June 28, 2005**

*Carl Horn, III* (signature)

Carl Horn, III
United States Magistrate Judge